IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| LYNNETTE DARLENE PERRIGIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 1:15-cv-552-GMB |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

On June 23, 2012, Plaintiff Lynette Darlene Perrigin ("Perrigin") applied for disability insurance benefits under Title II of the Social Security Act, alleging a disability onset date of March 1, 2012. Perrigin's claim was denied at the initial administrative level. Perrigin then requested and received a hearing before an Administrative Law Judge ("ALJ"). On September 20, 2013, the ALJ held a hearing, and denied Perrigin's claim on December 27, 2013. Perrigin requested review of the ALJ's decision by the Appeals Council and that request was denied on May 29, 2015. As a result, the ALJ's decision became the final decision of the Commissioner of Social Security (the "Commissioner").

The case is now before the court for review pursuant to 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(c)(1) and Rule 73.1 of the Local Rules for the United States District Court for the Middle District of Alabama, the parties have consented for the undersigned United States Magistrate Judge to conduct all proceedings in this case and to

enter a final judgment. Based on the court's review of the record and the relevant case law, the court finds that the decision of the Commissioner is due to be REVERSED and this case REMANDED to the Commissioner for further proceedings consistent with this decision.

## I. STANDARD OF REVIEW

The court reviews a social security case to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (internal quotations omitted). Indeed, the court must affirm the Commissioner's decision "if it is supported by substantial evidence and the correct legal standards were applied." *Kelly v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)).

"Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Jones ex rel. T.J.J. v. Astrue*, 2011 WL 1706465, at *1 (M.D. Ala. May 5, 2011) (citing *Lewis*, 125 F.3d at 1440). The court must scrutinize the entire record to determine the reasonableness of the decision reached. *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987). "If the Commissioner's decision is supported by substantial evidence, the district

court will affirm, even if the court would have reached a contrary result as a finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision." *Jones*, 2011 WL 1706465 at \*2 (citing *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991)). The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Id.* (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II.  STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i), 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medially acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Perrigin bears the burden of proving that she is disabled, and she is responsible for producing evidence to support her claim. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

Determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a) (2012). Specifically, the Commissioner must

3

determine in sequence:

(1) Is the claimant presently unemployed?
(2) Is the claimant's impairment severe?
(3) Does the claimant's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
(4) Is the claimant unable to perform his or her former occupation?
(5) Is the claimant unable to perform any other work within the economy?

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id.* at 1030 (quoting 20 C.F.R. § 416.920(a)−(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

### III. DISCUSSION

**A.   Facts**

Perrigin was 44 years old at the time of the ALJ's decision. R. 32. She has a high school education and past work experience as an apartment/property manager and front office manager. R. 21.

After reviewing the record and the testimony presented during an administrative hearing, the ALJ found that Perrigin suffers from the following severe impairments: lumbosacral degenerative disc disease status post laminectomy and fusion of L5-S1; obesity; asthma; diabetes mellitus; peripheral neuropathy; arthropathies; vitamin B12 and iron deficiency; degenerative disc disease and facet arthropathy of the cervical spine;

fibromyalgia; and depression. R. 15.  The ALJ further found that Perrigin suffers from the following non-severe impairments: gastroesophageal reflux; dysphasia; gastroparesis; gastric polyps; hiatal hernia; heartburn; and elevated cholesterol. R. 15–16.  Despite these impairments, after undertaking a review of the entire record, the ALJ found that Perrigin did not have an impairment or combination of impairments that meets or medically equals the severity of one of those listed in the applicable regulations. R. 16.  The ALJ further found that Perrigin had the residual functional capacity to perform sedentary work but that she is unable to perform any past relevant work. R. 18–21.  Ultimately, the ALJ concluded that Perrigin was not disabled within the meaning of the Social Security Act from March 1, 2012, her alleged disability onset date, through the date of the ALJ's decision, and her claim was denied. R. 21–22.

**B.     Issues Presented**

Perrigin presents the following issues for the court's review: (1) whether the ALJ erred in failing to give any weight to the opinion of Perrigin's treating nurse practitioner since she was supervised by a physician; and (2) whether the ALJ erred as a matter of law in finding that fibromyalgia is not an objectively determinable medical condition that can reasonably be expected to produce disabling pain.  After reviewing the record, the court finds that, for the reasons explained below, the ALJ's decision is due to be reversed and remanded on the issue of whether the ALJ properly evaluated the opinion of Perrigin's treating nurse practitioner.  In light of this remand, the court pretermits a discussion and decision on the second issue concerning whether fibromyalgia is an objectively

determinable medical condition that can reasonably be expected to produce disabling pain.

The ALJ's decision contains a brief paragraph discussing the "opinion evidence" presented in Perrigin's case. R. 21.  The ALJ gave substantial weight to the opinions of Drs. Samuel D. Williams and Thomas Thomson, two non-examining, reviewing physicians. R. 62–72 & 489–90.  However, with respect to the opinions contained in the Medical Source Statement completed by Perrigin's treating nurse practitioner, Lauren Kilcrease, R.N., D.N.P. ("Nurse Kilcrease"), the ALJ gave those opinions no weight because they were (1) "offered by a nurse, not an 'acceptable medical source,'" and (2) were "not consistent with the treatment evidence." R. 21.  The ALJ's decision does not elaborate any further on his reasoning for giving the Medical Source Statement no weight.

The court finds that the ALJ erred in failing to assign any weight to the Medical Source Statement.  Nurse Kilcrease provided the majority of Perrigin's care, and she did so under the supervision of Dr. Charles Wood, Perrigin's primary care physician.  Dr. Wood electronically signed Nurse Kilcrease's notes documenting her office visits with Perrigin,[1] and the parties agree that he initialed the Medical Source Statement that the ALJ rejected. R. 30, 384–488, 664–67; Docs. 15, 16 at 4.  Considering this evidence in

---

[1] The final pages of the office notes documenting Perrigin's office visits with Nurse Kilcrease typically contain the following language: "I have seen, evaluated, and provided care for this patient.  I agree with the observations noted in this summary.  Charles A. Wood, M.D.  Electronically signed by Charles Wood, M.D.," followed by the date and time Dr. Wood affixed his electronic signature. R. 384–488.  Nurse Kilcrease's signature is typically affixed below Dr. Wood's electronic signature on these medical records. R. 384–488.

conjunction with the Social Security regulations, the court finds that the Medical Source Statement completed by Nurse Kilcrease and signed by Dr. Wood, a licensed physician, was an "acceptable medical source" for providing evidence to establish an impairment and, therefore, the opinions contained therein should have been considered or at least addressed in some meaningful way by the ALJ. *See* 20 C.F.R. § 404.1513(a)(1); *King v. Astrue*, 493 F. Supp. 2d 1232 (S.D. Ala. 2007).

A district court in the Southern District of Alabama addressed a similar issue in *King v. Astrue*, ultimately reversing the decision of the ALJ and remanding for further proceedings.  In *King*, the ALJ rejected a Residual Functional Capacity Questionnaire that was completed by the claimant's treating nurse practitioner and a physician during the course of their treatment of the claimant at their health center because the form had been completed by a nurse, who was not an "acceptable medical source" to render an opinion on the claimant's diagnosis, and because the claimant had not been seen by a "medical physician" at the health center. *Id.* at 1234.  The court noted that, contrary to the ALJ's findings, the medical records showed that physicians regularly monitored the course of the claimant's treatment at the health center. *Id.*  The questionnaire was also signed by a doctor of osteopathic medicine, which, according to the court, made the questionnaire "an acceptable medical source for providing evidence to establish an impairment" even though it was completed by a nurse practitioner. *Id.*  Finally, while the government argued that any error by the ALJ in rejecting the opinions contained in the questionnaire was harmless because the doctor had merely "signed off" on it, the court squarely rejected that argument because "the ALJ made a conscious decision to ignore

7

the [physician's] signature" despite the fact that the physician's signature conveyed her approval of the questionnaire's contents. *Id.* at 1234–35.

The court finds the decision in *King* persuasive. Here, like the claimant in *King*, Perrigin's treatment by Nurse Kilcrease was regularly monitored by Dr. Wood. The ALJ also consciously ignored the fact that Dr. Wood electronically signed Nurse Kilcrease's notes from her office visits with Perrigin and initialed the Medical Source Statement that Nurse Kilcrease completed, indicating his approval of its contents. Thus, like the questionnaire in *King*, the Medical Source Statement submitted in Perrigin's case is an "acceptable medical source for providing evidence to establish an impairment," *id.* at 1234, and the opinions contained therein should have been given substantial or considerable weight by the ALJ unless good cause was shown to the contrary. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) ("The law of this circuit is clear that the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary."). Because the ALJ admittedly gave no weight to the Medical Source Statement, and because a review of his decision shows that he did not articulate good cause for failing to consider the Medical Source Statement,[2] the court finds that the ALJ committed reversible error. *See Reliford v. Barnhart*, 444 F. Supp. 2d

---

[2] The ALJ did state that he assigned the Medical Source Statement no weight because it was "not consistent with the treatment evidence." R. 21. This finding, however, is conclusory and does not "clearly articulate the reasons for giving less weight" to the Medical Source Statement. *Lewis*, 125 F.3d at 1440; *see also Duncan v. Astrue*, 2008 WL 1925091, at *3 (M.D. Fla. Apr. 29, 2008) (finding that the ALJ's refusal to consider opinions of treating physician assistant because they were "not consistent with her own progress notes" and "inconsistent with the evidence of record when considered in its entirety" did not provide the court with sufficient information from which it could determine how the ALJ reached this decision); *Morrison v. Barnhart*, 278 F. Supp. 2d 1331, 1336 (M.D. Fla. 2003) (noting that statement that treating physician opinion is inconsistent with record as a whole, including the doctor's own examination findings, "is too general to permit meaningful judicial review").

1182, 1186 (N.D. Ala. 2006) ("It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim. . . .  If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony must be accepted as true.") (internal quotation marks omitted).

Even if it were not error for the ALJ to ignore Dr. Wood's initials on (and thus tacit approval of) the Medical Source Statement, he should have still considered and meaningfully addressed the opinions of Nurse Kilcrease contained in that statement. Nurse practitioners are considered "other sources" under the regulations, and while their opinions are not entitled to the same controlling weight given to acceptable medical sources such as doctors, their opinions are still relevant to show the severity of the claimant's impairment and how it affects his or her ability to perform work-related activities.  *See* 20 C.F.R. 404.1513(d)(1).   The Social Security Administration now recognizes that nurse practitioners "play an important role in health care delivery" and that "their opinions should be evaluated 'on key issues such as impairment, severity and functional effects, along with other relevant evidence in the file.'"[3] *Wright v. Astrue*,

---

[3] To this end, Social Security Rule 06-03P, which clarifies the Administration's policies on how to consider opinions from sources other than "acceptable medical sources," recognizes that, in some circumstances, an opinion from a source who is not an "acceptable medical source" may even outweigh the opinion of an "acceptable medical source." SSR 06-03P, 2006 WL 2329939 at *5.  Rule 06-03P explains:
> [D]epending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source," including the medical opinion of a treating source.  For example, it may be appropriate to give more weight to the opinion of a medical source who is not an "acceptable medical source" if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion.  Giving more weight

9

2010 WL 988844, at *3 (N.D. Miss. Mar. 15, 2010) (quoting SSR 06-03P, 2006 WL 2329939 at *3); *see also* 20 C.F.R. § 404.1513(d)(1).  The SSA advises that the opinions of nurse practitioners should be evaluated using the same factors applied to "acceptable medical sources," including: (1) how long the source has known and how frequently the source has seen the individual; (2) how consistent the opinion is with other evidence; (3) the degree to which the source presents relevant evidence to support an opinion; (4) how well the source explains the opinion; (5) whether the source has a specialty or area of expertise related to the individual's impairments; and (6) any other factors that tend to support or refute the opinion. *See* SSR 06-03P, 2006 WL 2329939 at *4–5.

The record does not show that the ALJ engaged in a meaningful analysis of the Rule 06-03P factors.  Rather, the ALJ summarily rejected Nurse Kilcrease's opinions because they were from "a nurse" and were "not consistent with the treatment evidence."  But an ALJ "'is not free to disregard the opinions of health care professionals simply because they are not medical doctors.'" *Turner v. Astrue*, 2008 WL 4489933, at *13 (S.D. Ala. Sept. 30, 2008) (quoting *O'Connor v. Barnhart*, 2004 WL 2192730, at *5 (N.D. Iowa Sept. 28, 2004)).  Indeed, "the fact that [a nurse practitioner] is not a medical doctor is not a sufficient basis for rejecting [her] opinions on key issues such as impairment severity and functional effects." *Id.* at *14.

---

to the opinion from a medical source who is not an "acceptable medical source" than to the opinion from a treating source does not conflict with the treating source rules in 20 CFR 404.1527(d)(2) and 416.927(d)(2) and SSR 96-2p, "Titles II and XVI: Giving Controlling Weight To Treating Source Medical Opinions."
*Id.*

Moreover, rejecting a treating nurse practitioner's opinions because they are "not consistent with the treatment evidence," without any additional explanation, is not sufficient. *See Davila v. Comm'r of Soc. Sec.*, 993 F. Supp. 2d 737, 758 (N.D. Ohio 2014) (remanding ALJ decision rejecting opinion of nurse practitioner as inconsistent with treatment records because the ALJ did not provide any explanation of these inconsistencies). An adjudicator must instead "explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence . . . allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." SSR 06-03P, 2006 WL 2329939 at *6. While the ALJ in this case explained the weight given to the Medical Source Statement (i.e., no weight), he did not ensure that the discussion of the evidence allowed the court to follow his reasoning or undertake meaningful judicial review. To the contrary, the ALJ's rejection of the Medical Source Statement on the basis that it is "not consistent with the treatment evidence," without any additional explanation or elaboration, leaves the court "unable to discern what exactly the ALJ relied on in reaching his conclusion that significant probative evidence should be rejected." *Duncan v. Astrue*, 2008 WL 1925091, at *3 (M.D. Fla. Apr. 29, 2008). Thus, the court finds that the ALJ's refusal to give any weight to Nurse Kilcrease's opinions and to explain adequately his reasons for doing so constitutes reversible error. *See Turner*, 2008 WL 4489933 at *14 (rejecting the ALJ's decision to ignore a Residual Functional Capacity Form on the basis that it was inconsistent with the medical records because the ALJ "did not explain or elaborate on the alleged inconsistencies").[4]

---

[4] In fact, the explanation provided in *Turner*, which was found to be insufficient, contained greater detail

## IV.  CONCLUSION

For the foregoing reasons, it is ORDERED that, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner is REVERSED and the case is REMANDED with instructions to (1) re-evaluate the opinions contained in the Medical Source Statement completed by Nurse Kilcrease and, if they are again rejected, discuss the specific evidence supporting this conclusion; and (2) conduct any further proceedings deemed proper.

A final judgment will be entered separately.

DONE this 15th day of December, 2016.

                                            /s/ Gray M. Borden
                                  UNITED STATES MAGISTRATE JUDGE

---

than the ALJ's explanation for rejecting Nurse Kilcrease's opinions in this case.  In *Turner*, the ALJ stated the following with respect to the opinions of the nurse practitioner:

> The Administrative Law Judge recognizes that Jimmy White, CRNP, completed a Residual Functional Capacity Form on which he stated the claimant has marked estimated degree of difficulty in maintaining social functioning and frequent estimated deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner.  Additionally, Mr. White found the claimant has marked limitations in her ability to understand, carry out and remember instruction in a work setting (Exhibit 22-F).  The Administrative Law Judge does not give any weight to the residual functional capacity completed by Mr. White because he is not a medical doctor.  In addition, his limitations conflict with the rest of the medical reports, including those from Mobile Mental Health.  As stated above, in the treatment note dated January 5, 2006, the therapist noted the claimant was currently managed on medication.

*Turner*, 2008 WL 4489933 at *14.  In this case, however, with respect to Nurse Kilcrease's opinions, the ALJ stated only:

> [T]he opinion evidence in Exhibit 16F [the Medical Source Statement] was offered by a nurse, not an "acceptable medical source."  It is not consistent with the treatment evidence.  It merits no weight.

R. 21.